UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOEY FITCH, | Case No.: 1:16-cv-00489 - JLT |
| Plaintiff, | ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS AND DENYING THE MOTION TO STRIKE |
| v. | |
| JOSEPH GALLAND, CHRISTOPHER KNUTSON, and JEFFERY WATTS, | (Doc. 27) |
| Defendants. | |

Plaintiff asserts Bakersfield Police Officers Joseph Galland, Christopher Knutson and Jeffery Watts are liable for violations of his constitutional rights for actions taken related to the removal of his children from his home for eighteen months. (*See generally* Doc. 15) Defendants contend Plaintiff fails to state a claim for violations of the First, Fourth, and Ninth Amendments and seeks dismissal of the claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 27) In addition, Defendants seek to strike Plaintiff's prayer for punitive damages pursuant to Rule 12(f). (*Id.*)

For the reasons set forth below, the Court finds factual allegations are insufficient to support the claims challenged, and there is no personal right to a cause of action under the Ninth Amendment, Defendants' motion to dismiss under Rule 12(b)(6) is **GRANTED IN PART**; and the motion to strike under Rule 12(f) is **DENIED**.

I.   **Background and Factual Allegations**

Plaintiff asserts that early in the morning of November 12, 2013, he and his partner Bethany

1  Fardig "awoke to find one of their 16 day old twin boys not breathing." (Doc. 15 at 2, ¶ 6) Plaintiff
2  reports that he and Ms. Fardig "also had a girl that was three (3) years of age at this time." (*Id.*)
3  Plaintiff alleges "CPR was being conducted on baby J. Fitch as 911 was being called," but his son did
4  not survive. (*Id.*)

5  Plaintiff reports, "Forensic Pathologist, Dr. Robert Whitmore, performed the Autopsy of baby J.
6  Fitch on November 12, 2013." (Doc. 15 at 3, ¶ 8) According to Plaintiff, the preliminary cause of
7  death identified by Dr. Whitmore was "Sudden Unexplained Infant Death" with "[o]ther factors being
8  co-sleeping, and methamphetamine was determined to be present." (*Id.*, emphasis omitted) Plaintiff
9  alleges that a toxicology test of the baby's blood "did not reveal any findings of Toxicological
10 Significance." (*Id.* at 4, ¶ 11, emphasis and internal quotation marks omitted) On March 28, 2014,
11 Investigating Deputy Coroner, Rebecca Fisher, indicated: "After completing an investigation in
12 conjunction with the Bakersfield Police Department, the death of Joey Lee Fitch was determined that
13 the cause of death was sudden unexplained infant death and the manner was unable to be determined."
14 (Doc. 15 at 21; *see also id.* at 4, ¶ 13)

15 Plaintiff alleges that on April 17, 2014, Galland and Watts came to his home, "after attempting
16 phone contact a number of times within two weeks prior," and wanted to speak about the autopsy with
17 Ms. Fardig. (Doc. 15 at 4, ¶ 14) According to Plaintiff, the defendants inquired "how
18 methamphetamine may have gotten into baby Fitch" and mentioned obtaining a urinary analysis from
19 Ms. Fardig, after which she requested an attorney. (*Id.* at 4-5, ¶ 14) Plaintiff reports Galland and Watts
20 left at that time and returned to their vehicle. (*Id.* at 5, ¶ 14) However, Plaintiff alleges they returned
21 approximately thirty minutes later, after speaking with Sgt. Knutson, and called Ms. Fardig outside.
22 (*Id.*, ¶ 15) Plaintiff asserts Defendant Galland then arrested Ms. Fardig "for child endangerment
23 leading to the death" and removed the two minor children from the home, "stating that he seized the
24 children based upon the autopsy." (*Id.*, ¶ 15, emphasis omitted)

25 According to Plaintiff, "the facts demonstrate that [neither] 'imminent danger' nor exigent
26 circumstances existed at the time defendant Galland seized plaintiff Fitch's two (2) minor children
27 without a protective warrant which ended with his two minor children away from him in foster care for
28 18 months." (Doc. 15 at 6) Plaintiff asserts that in February 2016, he "was awarded custody of the two

2

minor children in question; and the court dismissed jurisdiction." (*Id.* at 6, ¶ 20)

Based upon the foregoing facts, Plaintiff filed contends Defendants "deprived Fitch and his two minor children of their right to be a family and live together, free from illegal search and seizure in violation of the First, Fourth, Ninth and Fourteenth Amendments of the United States Constitution." (Doc. 15 at 7, ¶ 21)  For these violations, the relief requested includes compensatory damages, punitive damages, costs of suit, and attorney fees. (*Id.* at 7)

## II.  Pleading Requirements

General rules for pleading complaints are governed by the Federal Rules of Civil Procedure.  A complaint must include a statement affirming the court's jurisdiction, "a short and plain statement of the claim showing the pleader is entitled to relief; and . . . a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a).  The Federal Rules adopt a flexible pleading policy, and *pro se* pleadings are held to "less stringent standards" than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 521-21 (1972).

A complaint must state the elements of the plaintiff's claim in a plain and succinct manner. *Jones v. Cmty Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984).  The purpose of a complaint is to give the defendant fair notice of the claims against him, and the grounds upon which the complaint stands. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).  The Supreme Court noted,

> Rule 8 does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).

## III.  Motions to Dismiss

A Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Dismissal under Rule 12(b)(6) is appropriate when "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  Thus, under Rule 12(b)(6), "review is limited to the complaint alone." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court explained,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (internal citations, quotation marks omitted).

A court must construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in favor of the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to officer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Therefore, the Court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Assoc. v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). Here, Defendants challenge Plaintiff's claims for violations of the First, Fourth, and Ninth Amendments. (Doc. 27-1)

**A.     Representation of Others**

As an initial matter, Defendants observe that the caption in the First Amended Complaint indicates "Plaintiffs" are "Joey Fitch, on behalf of himself and his Minor Children, E. Fitch and J. Fitch." (Doc. 15 at 1, emphasis omitted) However, the section entitled "Parties" in the First Amended Complaint does not include the children. (*Id.* at 2) Thus, Defendants contend it is unclear whether Plaintiff intended to include his children as plaintiffs in this matter. (Doc. 27-1 at 4) To the extent Plaintiff does seek to state claims on behalf of his children, Defendants contend he is unable to do so. (*Id.* at 4)

Plaintiff does not clarify whether he seeks to state claims on behalf of his children in his opposition to the motion to dismiss. (*See generally* Doc. 38) Notably, the caption on the document omits any reference to the children and identifies only Joey Fitch as the named plaintiff. (*Id.* at 1)

Significantly, as Defendants observe, Plaintiff cannot bring claims on behalf of others while

proceeding *pro se* in this action. The Ninth Circuit determined the right to represent oneself does not extend to representation of others. *Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008); *see also Russell v. United States*, 308 F.2d 78, 79 (9th Cir. 1962) ("A litigant appearing in propria persona has no authority to represent anyone other than himself"). Accordingly, the Court determined "a parent or guardian cannot bring an action on behalf of a minor child without retaining a lawyer." *Johns v. County of San Diego*, 114 F.3d 874, 877 (9th Cir. 1997). As a result, Plaintiff is unable to state claims on behalf of his children, and to the extent Plaintiff does so in the First Amended Complaint, the claims of the minor children are **DISMISSED** without prejudice.

### B. Section 1983 Claims

Plaintiff seeks to proceed with claims in this action under 42 U.S.C. § 1983 ("Section 1983"), which "is a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Thus, an individual may bring an action for the deprivation of civil rights pursuant to Section 1983, which states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. A plaintiff must allege facts from which it may be inferred (1) he was deprived of a federal right, and (2) a person or entity who committed the alleged violation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Williams v. Gorton*, 529 F.2d 668, 670 (9th Cir. 1976).

A plaintiff must allege a specific injury he suffered and show causal relationship between the defendant's conduct and the injury suffered. *See Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976). Thus, Section 1983 "requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff." *Chavira v. Ruth*, 2012 WL 1328636 at *2 (E.D. Cal. Apr. 17, 2012). An individual deprives another of a federal right "if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do so that it causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

1.     First Amendment Violation

The First Amendment to the Constitution provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." *U.S. Const. amend. I*. On the other hand, the Supreme Court of the United States determined also that "the First Amendment protects those relationships, including family relationships, that presuppose 'deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life.'"[1] *Board of Dir. v. Rotary Club*, 481 U.S. 537, 545 (1987) (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 619-20 (1984)).

In *Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001), the Ninth Circuit determined a plaintiffs "adequately alleged" an "unwarranted interference" with the "right to familial association under both the First and Fourteenth Amendments" where the plaintiffs alleged:

> Mary Sanders Lee began searching for her son after his arrest. She contacted the Los Angeles Police Department, unknown employees of which told her that they had no record of, or information concerning, her son, when in fact, they knew or should have known that they had falsely arrested him and caused him to be extradited to New York. From 1993 to 1995, Mrs. Lee repeatedly contacted the Los Angeles Police Department regarding the whereabouts of Kerry Sanders. However, each time she was informed that his whereabouts were unknown …. The reckless, intentional and deliberate acts and omissions of defendants … were a direct and legal cause of the deprivation of [Plaintiffs'] constitutionally protected right under the First and Fourteenth Amendments to the association, companionship and society of one and other as mother and son.

*Id.* at 685. The Court explained that the "constitutional interest in familial companionship logically extends to protect children from unwarranted state interference with their relationships with their parents." *Id.* Accordingly, the Court determined that both Ms. Lee and Mr. Sanders stated a claim for a violation of the First Amendment.

Similarly, here, Plaintiff alleges that Officer Galland interfered with his relationship with the children by removing them from Plaintiff's home five months after the autopsy on his son was completed, and "without a protective warrant and no imminent danger." (Doc. 15 at 5, ¶15; *see also*

---

[1] The defendants' motion does not consider that the First Amendment also protects associational rights between intimates.

*id.* at 6, ¶ 19)  Thus, the facts alleged support a claim that Officer Galland deliberately interfered with Plaintiff's "protected right… to the association, companionship, and society" of his children.  *See Lee*, 250 F.3d at 685. Defendants' motion to dismiss the claim against Officer Galland is **DENIED**.

On the other hand, Plaintiff fails to allege facts that specifically link defendants Knutson and Watts to the removal of the children from his home.  Rather, Plaintiff alleges it was Galland who was "the lead investigator," was present during the autopsy, and who "seized plaintiff Fitch's two (2) minor children without a protective warrant which ended with his two minor children away from him in foster care for 18 months." (*See* Doc. 15 at 2, 6 ¶¶ 7, 18)  Further, though Plaintiff alleges that Galland called Knutson prior to the removal, Plaintiff alleges only that "Knutson gave the okay… to arrest Fardig without a warrant." (*Id.* at 5, ¶ 16)  There is no indication that Knutson or Watts were involved with the decision to remove the children.  Accordingly, the facts alleged are not sufficient to support a claim for a violation of the First Amendment by defendants Knutson and Watts, and the motion to dismiss is **GRANTED**.  However, because the factual deficiencies may be cured, the claim is **DISMISSED** with leave to amend.  *See Lopez v. Smith*, 203 F.3d 1122, 1127-28 (9th Cir. 2000)

### 2. Fourth Amendment Violation

The Fourth Amendment protects children and families from warrantless removal of a child from their home.  *See Doe v. Lebbos*, 348 F.3d 820, 827 n.9 (9th Cir. 2003).  Absent exigent circumstances, a warrant must be obtained to remove a child from the home. *Rogers v. Cnty. of San Joaquin*, 487 F.3d 1288, 1291 (9th Cir. 2007).  Exigent circumstances are those showing a risk of imminent harm in the time it would take to get a warrant.  *See id.*  "Officials may remove a child from the custody of [the] parent without prior judicial authorization only if the information they possess at the time of the seizure is such as provides reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury." *Wallis v. Spencer*, 202 F.3d 1126, 1138 (9th Cir. 2000) (citation omitted).

In *Wallis v. Spencer*, the Ninth Circuit addressed parents' and children's claims that the children in were unlawfully seized and removed from their parents' custody. *Id.*, 202 F.3d 1126. The Court determined that "because only the children were subjected to a seizure, their claims should properly be assessed under the Fourth Amendment." *Id.* at 1137, n.8.  On the other hand, "claims of

the parents in this regard should properly be assessed under the Fourteenth Amendment standard for interference with the right to family association." *Id.*

Because Plaintiff is unable to state claims on behalf of his children for an unlawful seizure—and his claim is properly analyzed under the Fourteenth Amendment— Defendants' motion to dismiss the Fourth Amendment claim is **GRANTED**.[2]

### 3. Ninth Amendment Violation

The Ninth Amendment provides, "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." *U.S. Constitution amend. IX*. Other than a general reference to the Ninth Amendment, Plaintiff does not set suggest a legal theory or basis for his claim. Indeed, the Ninth Amendment does not independently secure any constitutional right for which Plaintiff may pursue a civil rights claim against the government. *See Strandberg v. City of Helena,* 791 F.2d 744, 748 (9th Cir. 1986). Therefore, Defendants' motion to dismiss the claim for a violation of the Ninth Amendment is **GRANTED**.

## IV. Motion to Strike

Pursuant to Rule 12(f), a district court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A "redundant" matter is comprised "of allegations that constitute a needless repetition of other averments or which are foreign to the issue to be denied." *Wilkerson v. Butler*, 229 F.R.D. 166, 170 (E.D. Cal. 2005). An immaterial matter "has no essential or important relationship to the claim for relief or the defenses being pleaded,"

---

[2] To the extent Plaintiff seeks to challenge a determination by the state court that the removal of the children from his home was improper through his claim for a civil rights violation, this Court is not empowered to review the decision of the state court.

A federal plaintiff who asserts the state court made an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, is barred by the *Rooker-Feldman* doctrine, which bars the district court "from exercising subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004); *see also Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003). On the other hand, if a federal plaintiff asserts another party caused the legal harm, *Rooker-Feldman* does not bar jurisdiction. *Noel*, 341 F.3d at 1164.

If Plaintiff chooses to amend his complaint, he must address the fact that, apparently, the Kern County Juvenile Court determined that the children could not safely remain in his custody and determined they had to be placed in foster care for 18 months (Doc. 15 at 6). To make this determination, the Juvenile Court **must have** determined that the children could not safely remain in Plaintiff's care. Cal. Welf & Instit. Code § 361(a). Plaintiff may not challenge the correctness of this determination in this Court.

while an "[i]mpertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds* (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382, at 706-07, 711 (1990)).

Significantly, however, the Ninth Circuit has opined a Rule 12(f) motion is not the proper method by which to strike a claim for punitive damages. *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010). In *Whittlestone*, the district court struck the plaintiff's claims for lost profits and consequential damages, and the Ninth Circuit examined "whether Rule 12(f) authorizes the district court to strike such matter at all." *Id.* at 973. Finding Rule 12(f) did not empower the court to strike the claims for damages, the Ninth Circuit explained:

> Were we to read Rule 12(f) in a manner that allowed litigants to use it as a means to dismiss some or all of a pleading ... we would be creating redundancies within the Federal Rules of Civil Procedure, because a Rule 12(b)(6) motion (or a motion for summary judgment at a later stage in the proceedings) already serves such a purpose ... We therefore hold that **Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law**.

*Id.* at 974-75 (emphasis added). Further, the Court observed the plaintiff's claims for damages were not encompassed within the categories of matters that may be stricken pursuant to Rule 12(f), and could not be considered immaterial "because whether these damages are recoverable relates directly to the plaintiff's underlying claim for relief." *Id.* at 974.

Consequently, this Court has denied motions to strike prayers for punitive damages because a claim for damages does not satisfy one of the five categories of material that may be stricken under Rule 12(f)). *See, e.g.*, *Estate of Prasad ex rel. Prasad v. Cnty. of Sutter,* 958 F. Supp. 2d 1101, 1128 (E.D. Cal. 2013). Likewise, "Rule 12(f) is not the appropriate avenue" to strike a request for attorneys' fees, even where the plaintiff is proceeding pro se and fails to identify a legal basis for the request. *Yu v. Design Learned, Inc.*, 2016 WL 3541046 at *8 (N.D. Cal. June 29, 2016); *see also Lexington Ins. Co. v. Energetic Lath & Plaster, Inc.*, 2015 WL 5436784, at *11 (E.D. Cal. Sept. 15, 2015) (denying a motion to strike punitive damages and attorney's fee allegations pursuant to Rule 12(f), in light of the Ninth Circuit's ruling in *Whittlestone* that the rule "does not authorize a district court to strike 'a claim for damages on the basis that it is precluded as a matter of law'"). Accordingly, Defendants' motion to

strike portions of Plaintiff's prayer is **DENIED** without prejudice.

**V.     Conclusion and Order**

Based upon the foregoing, the Court **ORDERS**:

1. Defendants' motion to dismiss pursuant to Rule 12(b)(6) is **GRANTED IN PART and DENIED IN PART** as follows:

    a. Defendants' motion to dismiss the First Amendment claim against defendant Galland is **DENIED**;

    b. Plaintiff's claim for a violation of the First Amendment against defendants Knutson and Watts is **DISMISSED** with leave to amend;

    c. Plaintiff's claims for violations of the Fourth and Ninth Amendments are **DISMISSED** without leave to amend;

2. Defendants' motion to strike pursuant to Rule 12(f) is **DENIED**; and

3. Plaintiff **MAY** file any Second Amended Complaint **within thirty days** of the date of service of this Order.  <u>If Plaintiff chooses to not file </u>a Second Amended Complaint, within the same thirty days, he **SHALL** notify the Court that he wishes to proceed only upon his claim for a violation of the Fourteenth Amendment and on his First Amendment claim against Defendant Galland.  In that event, the First Amended Complaint will be remain the operative complaint in the action, with the claims for violations of the Fourth and Ninth Amendments dismissed as to all defendants and the First Amendment violation dismissed as to Knutson and Watts.

IT IS SO ORDERED.

Dated:     **January 6, 2017**                    **/s/ Jennifer L. Thurston**
                                                             UNITED STATES MAGISTRATE JUDGE